# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| *Ex rel. Martin Schell*, ) | |
| ) | |
| and ) | |
| ) | |
| Martin Schell, individually, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 12-cv-04019 |
| ) | |
| BLUEBIRD MEDIA, LLC, et al., ) | |
| ) | |
|     Defendants. ) | |

**ORDER**

Pending before the Court is a Motion to Dismiss by Defendants Bluebird Network, LLC, and Bluebird Media, LLC. [Doc. #22]. Defendants move to dismiss Relator Martin Schell's Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

**I.    Background**

Relator Martin Schell was employed by Defendant Bluebird Media, LLC as Vice President of Business Development beginning on or about October 9, 2010. Bluebird Media later merged with Missouri Network Alliance to form Defendant Bluebird Network, LLC. At this point, his title changed to Vice President of Operations. As VP of Operations, Schell was a key member of a management team in charge of constructing and operating a fiber optics cable network across

1

northern Missouri.  Schell asserts that because of the responsibilities attendant on this position, he has direct and independent knowledge of the events described in his Complaint.

Schell brings a Qui Tam action under the False Claims Act, alleging that Defendants Bluebird Media and Bluebird Network knowingly made false statements to the National Telecommuncations and Information Administration ("NTIA") in order to procure a 3-year, $45-million grant from the American Reinvestment Recovery Act Broadband Technology Opportunities Program ("ARRA BTOP").  Specifically, Schell alleges that Defendants 1) falsely represented that the area to be served by the grant was "under-served" in terms of broadband internet access; 2) falsely represented that Boone County National Bank would match certain funds, as required by NTIA; 3) falsely classified that State of Missouri's "in-kind" contribution; 4) falsely stated that two individuals whom NTIA had declared ineligible to work on the project because of their involvement in bankruptcy proceedings, Christopher and Tatum Martin, would not manage Defendant's involvement with the project; and 5) falsely claimed they could create a viable and sustainable business when they knew that providing below-market services to the state of Missouri foreclosed this possibility.  He further alleges that he was terminated from his position as the result of his active opposition to Defendants' alleged misrepresentations. [Doc. #27 – Relator's Suggestions in Opposition].

Schell brings three Counts against Defendants. Count I is an action under the False Claims Act, 31 U.S.C. § 3729, for fraud against the United States. Count II is a claim for Retaliation under the False Claims Act, 31 U.S.C. § 3730(h). Count III alleges a violation of Missouri's Letter of Dismissal Statute, Mo. Ann. Stat. § 290.140. [Doc. #1 – Complaint]. The United States has chosen not to intervene on Schell's behalf. [Doc. #5].

Defendants have moved to dismiss Schell's Complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6), arguing that Schell has failed to plead with the particularity required by Rule 9(b) in claims alleging fraud or misrepresentation, and failed to plead factual allegations that rise above the speculative level as required by Rule 12(b)(6).

## II.     Discussion

### A.     Motion to Dismiss Standard

Federal Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this "notice pleading" requirement is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)). To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.

Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). A claim is sufficiently plausible when it sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir. 2012) (quoting *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949). Importantly, "a formulaic recitation of a cause of action's elements" will not satisfy the pleading standard. *Twombly*, 550 U.S. at 545, 127 S. Ct. at 1959.

Additionally, when a complaint alleges fraud under the False Claims Act, it must meet the slightly higher standard of particularity established by Rule 9(b). *U.S. ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). Rule 9(b) requires that the complaint "must state with particularity the circumstances constituting fraud or mistake," although mental states such as malice, intent, and knowledge may be alleged generally. Fed.R.Civ.P. 9(b). This particularity requirement "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Costner*, 317 F.3d at 888. To meet this heightened standard, "the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result... Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). A plaintiff need not state each element of the fraud claim with particularity to satisfy this

requirement; rather, a plaintiff "must state enough so that his/her pleadings are not merely conclusory."  *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997).  "In resolving a Rule 9(b) motion in an FCA matter, allegations should be taken as true and all reasonable inferences drawn in the relator's favor."  *U.S. ex rel. Sandager v. Dell Mktg., L.P.*, 872 F. Supp. 2d 801, 812 (D. Minn. 2012) (citing *Joshi*, 441 F.3d at 556).

### B. Count I – False Claims Act

The False Claims Act imposes liability on anyone who "(1) 'knowingly presents, or causes to be presented, [to a federal official] a false or fraudulent claim for payment or approval,' or (2) 'knowingly makes ... a false record or statement to get a false or fraudulent claim paid or approved.'"  *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) (quoting 31 U.S.C. § 3729(a)(1)-(2)).  The Act is intended to "protect the federal fisc by imposing severe penalties on those whose false or fraudulent claims cause the government to pay money."  *U.S. ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 796 (8th Cir. 2011).  Under the Act's qui tam provision, private persons, or relators, may "sue for violations 'in the name of the government' and recover a share of the proceeds if the suit is successful."  *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (quoting 31 U.S.C. § 3730(b), (d)).  To state a prima facie case under the Act, the relator must show "(1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent."  *Id.*  (quoting *United*

*States v. Basin Elec. Power Coop.*, 248 F.3d 781, 803 (8th Cir. 2001)).

Additionally, for liability to attach, the fraudulent claim must be "material" to the government's decision to disperse money. *U.S. ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 796 (8th Cir. 2011).

Defendants argue that Schell's allegations do not state a claim for violation of the False Claims Act with the particularity required by Rule 9(b).

### 1.     *Under-Served Area*

Schell makes the following allegation: that the "purpose of the grant program was to provide broadband internet services to under-served, primarily rural regions of the United States," and that Defendant Bluebird Media falsely and knowingly

> "represented to NTIA in its grant application that the area of northern Missouri it was to service was under-served even though there are a plethora of service providers in the area and an existing 3,000-mile fiber optic network that weaves in and out of the 59 counties in Defendant [Bluebird] Media's proposed service territory."

[Doc. #1 – Complaint].  Defendants argue that this allegation is "conclusory" and that Schell does not cite any law or grant eligibility requirements defining the meaning of "under-served."  They also argue that Schell should have included who made the representation and who the other service providers in the area were, as well as the services they provided.  [Doc. #22 – Motion to Dismiss].

This level of detail is not required even under Rule 9(b)'s heightened pleading standard.  Rule 9(b) "was never meant to require a plaintiff to set forth every factual detail supporting its claim...."  *United States v. NHC Healthcare*

*Corp.*, 115 F. Supp. 2d 1149, 1152 (W.D. Mo. 2000); *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006) (a plaintiff is not required "to allege specific details of *every* alleged fraudulent claim forming the basis" of his complaint) (emphasis in original). Rather, the purpose of Rule 9(b)'s heightened pleading standard is "to inhibit the filing of a complaint as a pretext for the discovery of unknown wrong, protect defendants from the harm that might come to their reputations when charged with acts of moral turpitude, and finally ensure that the allegations are particularized enough to enable defendants to prepare an adequate defense." *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.*, 918 F. Supp. 1338, 1345 (E.D. Mo. 1996) (internal quotes omitted). Where a defendant is able to "mount[] a vigorous defense" at the motion to dismiss stage, it is an indication that the pleadings are sufficiently specific. *NHC Healthcare*, 115 F. Supp. 2d at 1151.

Here Defendants are clearly on notice as to Schell's allegations. Schell has satisfied the requirements of 9(b) by claiming that Defendants made the allegedly false statement to NTIA that the area they proposed to service was under-served, that this was a requirement of grant funding, and that evidence exists to challenge the veracity of Defendants' statement that the area was under-served. Contrary to Defendants' argument, Schell does not have to provide a legal argument for what constitutes "under-served" at this stage of the pleadings or go into detail about who made the statement or which companies provided the services. He must only cite enough detailed information to allow Defendants to "prepare a responsive

pleading." *O'Keefe*, 918 F. Supp. at 1345. By alleging the above facts, Schell has provided sufficient information to engender a responsive pleading. Indeed, Defendants' arguments about the legal definition of "under-served" go to the merits, which indicate that the Complaint "does not appear to be hampered by a lack of specific allegations." *NHC Healthcare*, 115 F. Supp. 2d at 1151.

### 2. *Bank Financing Letter*

Defendants also take issue with Schell's allegation that "NTIA required that the grantee… be able to match a certain amount of grant funds in order to receive the grant" and that Boone County National Bank, "as a personal favor to Defendant [Bluebird] Media owner Otto Maly, provided NTIA a letter stating that it would provide the necessary match of cash," while actually "never intend[ing] to supply the necessary funds," and that no funds were ever provided. [Doc. #1 – Complaint]. Schell alleges that "Defendants and the bank knew there was never any intention to follow through on this promise." *Id*. Defendants argue that Schell has not alleged that Defendants made the false statement or knew that the statement by Boone County National Bank was false.

The False Claims Act does not require that the defendant itself "make" the false representation to the government. Rather, liability attaches to any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729 (a)(1)(A)-(B). By submitting a letter from the Bank attesting that

8

Defendants would receive the necessary amount of funding, Defendants "caused to be presented" or "caused to be used" the allegedly false statement. The fact that they did not make the statement themselves does not affect their potential liability under the False Claims Act.

Defendants also argue that Schell hasn't alleged specific facts to show they knew the letter was false. To be found liable under the False Claims act, a defendant must act "knowingly" in submitting a false claim. 31 U.S.C. § 3729(a)(1)(A)-(B). In addition to "actual knowledge," "knowingly" includes "deliberate indifference" or "reckless disregard" of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). Under certain circumstances, knowledge may also be imputed to defendants under the False Claims Act. *See, e.g., U. S. v. Rohleder*, 157 F.2d 126, 129-30 (3d Cir. 1946) (where false representations were made by defendant's agents for defendant's sole benefit, defendant could not escape liability on ground that he had no knowledge of falsity). Furthermore, at the pleading stage, mental states like malice, intent, and knowledge may be alleged generally. Fed. R. Civ. P. 9(b). Rather, the relator need only set forth "factual content that allows the court to draw the reasonable inference" of knowledge. *Ashcroft*, 556 U.S. at 678, 129 S. Ct. at 1949. An allegation of knowledge is sufficiently pled under the False Claims Act where, read in the light most favorable to the relator, "it can reasonably be inferred from these facts that [the defendant] knew" of the false representations. *U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 320-21 (E.D. Pa. 2012). Here,

9
Case 2:12-cv-04019-NKL   Document 33   Filed 06/28/13   Page 9 of 20

Schell alleges that the letter was provided by the Bank as a "personal favor" to Defendant Bluebird Media's owner for purposes of obtaining the grant, that the Bank never intended to supply the funding, and that no funding was ever provided. He further alleges that both "Defendants and the bank knew there was never any intention to follow through on this promise" to provide funding. Under Rule 9(b), this is sufficient to infer that Defendants knew of the false representation in the letter.

### 3. "In-Kind" Contribution

Defendants further argue that Schell failed to plead with particularity his allegation that Defendants "knowingly ma[de] a false statement to NTIA and the United States that Defendants received a requisite $10.5 million in-kind contribution from the State of Missouri so as to be eligible for the $45 million ARRA BTOP grant, when in fact Defendants sold its services at cut rates in exchange for the rights-of-way and parcels of land, a transaction Defendants falsely classified as an 'in-kind contribution.'" [Doc. #1 – Complaint]. Defendants argue that this allegation was not pled with particularity because Schell failed to define "in-kind contribution" or show that an exchange of property or services did not meet this definition.

The definition of "in-kind contribution" and whether the arrangement between Defendants and Missouri satisfied this requirement of the grant goes to the merits of the case. As discussed above regarding Defendants' claim that "under-served" was not defined, Schell need not delve into legal arguments at the

10
Case 2:12-cv-04019-NKL   Document 33   Filed 06/28/13   Page 10 of 20

pleading stage. Indeed, the fact that Defendants proceed to challenge this allegation on the merits reveals that Schell has provided sufficient factual information so as to permit Defendants to file a responsive pleading. *O'Keefe*, 918 F. Supp. at 1345. As discussed above, if a defendant "mount[s] a vigorous defense" at the motion to dismiss stage, it is an indication that the pleadings are sufficiently specific. *NHC Healthcare*, 115 F. Supp. 2d at 1151.

Defendants also claim that Schell has not alleged a factual basis showing that the in-kind contribution was material to the NTIA's decision to award the grant. For liability to attach, the fraudulent claim must be "material" to the government's decision to disperse money. *Vigil*, 639 F.3d at 796. In other words, "the FCA 'requires a causal link between the 'false statement or record' and the government's payment of a false claim.'" *U.S. ex rel. Miller v. Weston Educ., Inc.*, 2012 WL 6190307 at *2 (W.D. Mo. Dec. 12, 2012) (citing *Vigil*, 639 F.3d at 799). Defendants point out that Schell concedes that Defendants could have provided the required $10.5 million in liquid capitalized assets rather than receive the money through an in-kind contribution, and attained grant eligibility that way. [Doc. #22 – Motion to Dismiss]. However, just because a condition of funding could have been satisfied two different ways does not mean that Defendants' decision to meet the condition one way through a false representation is not "material." To qualify for the grant, Defendants would have either had to receive an in-kind contribution from Missouri for $10.5 million, or provide their own assets in that amount. Schell alleges that Defendants did not have that money in

11

their own assets, and so had to receive an in-kind contribution to be eligible. He further alleges that Defendants informed NTIA that they received an in-kind contribution. Since the grant was conditioned on Defendants having this amount, and they informed NTIA they received the amount through an in-kind contribution, it can be concluded that NTIA's decision to award the grant was based on this representation of Defendants'. Therefore, the allegedly fraudulent representation was material.

### 4. *Management by the Martins*

Schell also alleges that Defendant Bluebird Media owner Otto Maly "was required to verify to NTIA that two Defendant [Bluebird] Media owners, Christopher Martin and Tatum Martin…, who are also on the Board of Directors for Defendant [Bluebird] Network, would not be involved in management of Defendant [Bluebird] Network due to ongoing bankruptcy proceedings of the Martins" and companies owned by them. [Doc #1 – Complaint]. Schell alleges, "Upon knowledge and belief, at all times relevant herein, the Martins actively participated in management of Defendant [Bluebird] Network, despite Maly's representation to NTIA that they would not." *Id*. He also alleges that work on the grant was outsourced to a limited liability company owned and managed by the Martins, and that the Martins' company "was awarded approximately one-third of the allocated routes to accomplish the engineering projects" funded by the grant. *Id*.

Defendants argue that Schell did not allege when Maly's misrepresentation occurred or particular facts showing the Martins participated in the management of Bluebird Network. However, a plaintiff is not required "to allege specific details of *every* alleged fraudulent claim forming the basis" of his complaint. *Joshi*, 441 F.3d at 557 (emphasis in original). "The sufficiency of the pleading under Rule 9(b) depends upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading." *O'Keefe*, 918 F. Supp. at 1345 (internal quotes omitted) (finding that although the 25-page Complaint did not "cite every instance of mischarging,… given the complexity of this case and length of time during which the fraudulent conduct allegedly occurred," the factual basis set out in the complaint satisfied Rule 9(b)). Schell has alleged that the grant was conditioned on the Martins' not exercising a management role over Bluebird Network, but that in spite of Maly's representation that this would not occur, the Martins continued to exercise control such that their company was actively involved in work on the grant and was awarded 1/3 of the projects funded by the grant. This is sufficient to put Defendants on notice as to the basis of Schell's Complaint. Given the complexity of the case, under the reasoning of *Joshi* and *O'Keefe*, Schell is not required under Rule 9(b) to allege every specific detail showing that the Martins exercised a management role.

     5.     ***Viable and Sustainable Business***

Defendants also contest the sufficiency of Schell's allegation that Defendants falsely represented that they would provide "a viable and sustainable business with the proceeds of the grant" while all the while knowing that this promise was illusory because, given the terms of their contract with the State of Missouri, creation of a viable and sustainable business was impossible. Specifically, Schell alleges that Defendants knew that the "complicated and expensive network services" provided to Missouri below market value in lieu of an in-kind contribution "effectively foreclosed" their ability to create a viable and sustainable business. [Doc. #1 – Complaint].

Defendants argue that Schell has not pled a sufficient factual basis for this "conclusory" allegation. For the reasons already discussed above, this contention has no merit. Schell has alleged that Defendants knew their arrangement with Missouri would prevent the company from creating a viable and sustainable business, but that they nonetheless represented that this condition would be met in their grant application. Schell need not prove at this stage that the business was in fact not viable or sustainable. Nor under the general pleading requirement for knowledge is he required to show specific facts indicating Defendants knew that the business was not viable or sustainable. Again, "Rule 9(b) was meant to require detailed pleadings in cases of fraud so as to aid a defendant in supporting its case. It was never meant to require a plaintiff to set forth every factual detail supporting its claim, nor was it meant to fuse the stages of pretrial investigation and discovery." *NHC Healthcare*, 115 F. Supp. 2d at 1152. Schell's allegations are

sufficient to put Defendants on notice of the substance of Schell's Complaint and permit them to file a responsive pleading.

Furthermore, Rule 9(b) does not require a relator "to allege specific details of *every* alleged fraudulent claim" – rather, the relator "must provide *some representative examples* of [defendants'] alleged fraudulent conduct." *Joshi*, 441 F.3d at 557 (emphasis added). Defendants concede that "if Relator pleaded all the requisite elements of a single false claim with the particularity required under Rule 9(b), his Complaint would survive dismissal notwithstanding the lack of particularity surrounding other alleged claims." [Doc. #29 – Reply Suggestions] (emphasis omitted). Schell has provided representative examples of Defendants' alleged fraud in the submission of the grant to NTIA. Even if Schell's allegation that Defendants misrepresented that viability of the project to NTIA was not sufficiently supported, this would not merit a dismissal of his Complaint, because he has pled the other instances of alleged fraud with sufficient particularity. For these reasons, Schell's Complaint satisfies Rule 9(b).

### B. Count II – Retaliation

In Count II of his Complaint, Schell brings a claim under the False Claims Act's whistleblower protection provision, which provides relief for employees who engage in conduct protected by the False Claims Act and are discharged, demoted, or experience other discriminatory consequences as a result. 31 U.S.C. § 3730(h). Schell alleges that he communicated with Defendants' Chief Executive Officer five times between October 2010 and August 2011 to express his "fears of

15
Case 2:12-cv-04019-NKL   Document 33   Filed 06/28/13   Page 15 of 20

potential misrepresentation and fraud on the part of Defendants regarding their statements to NTIA..." [Doc. #1 – Complaint]. Schell alleges that as a result of voicing his concerns, his employment status was changed from hourly to salaried in January 2011, which had the effect of reducing his compensation. He was then summarily discharged in October 2011. Schell alleges that this retaliation

> "was motivated solely by Schell's engaging in activities protected by the False Claims Act, in that Schell was terminated because he reported to his supervisors his good faith suspicions, inter alia, of self-dealing by [Defendants'] Board members…, fraudulent statements Defendant made to NTIA regarding the ARRA BTOP grant application and within associated documents, and the fact Defendants did not actually receive an 'in-kind' contribution from the State of Missouri…"

[Doc. #1 – Complaint].

To state a claim for retaliation under the False Claims Act, the plaintiff must show "(1) the plaintiff was engaged in conduct protected by the FCA; (2) the plaintiff's employer knew that the plaintiff engaged in the protected activity; (3) the employer retaliated against the plaintiff; and (4) the retaliation was motivated solely by the plaintiff's protected activity." *Schuhardt v. Washington Univ.*, 390 F.3d 563, 566 (8th Cir. 2004).

"An employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government." *Id*. In other words, the employee must have "both a good-faith and an objectively reasonable belief that [the employer] was committing fraud against the government." *Wilkins v. St. Louis Hous. Auth.*, 314

F.3d 927, 933 (8th Cir. 2002). As discussed above, Schell has stated a claim for violation of the False Claims Act by Defendants. As Vice President of Operations, Schell had personal knowledge of Defendants' grant application and conduct in this regard. He alleges in his Complaint that he communicated his concerns about potential False Claims Act violations to Defendants' CEO and other officers multiple times over a year-long period, and that as a result of his persistent complaints his pay was reduced and he was ultimately fired. The fact that Schell repeatedly voiced his concerns to Defendants indicates that he believed in good faith that these violations were occurring. Additionally, taking the allegations in the Complaint as true, it would not be unreasonable for a person witnessing the conduct Schell witnessed to believe that Defendants were committing fraud.

An "employee's report of illegal or unlawful activity is sufficient to put an employer on notice that the employee is engaged in protected activity." *Schuhardt*, 390 F.3d at 568 (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994)). According to the facts alleged in his Complaint, Schell specifically communicated to Defendants his concerns that they were making false statements to the NTIA. As such, Defendants were on notice that Schell was engaging in protected activity.

Additionally, to state a retaliation claim, "the retaliation must have been motivated solely by the plaintiff's protected activity." *Collins v. Ctr. For Siouxland*, 2011 WL 2893038 at *12 (N.D. Iowa July 15, 2011) (citing *Schuhardt*,

17

390 F.3d at 566). Schell alleges that the stated reason for his termination was "elimination of position," but that this reason was a pretext concocted by the Board at the advice of counsel to avoid a potential damages suit. [Doc. #1 – Complaint]. Defendants argue that Schell has failed to allege facts to support this claim. However, Schell has offered specific facts, including the date of the Board meeting at which his termination was decided; the instructions given to CEO Fogle to terminate Schell; Fogle's subsequent consultation with counsel Karen Milner regarding the legal consequences of terminating Schell; and the date of a second meeting by the Board to concoct a reason for Schell's termination. [Doc. #1 – Complaint]. These pleadings are sufficiently detailed to state a claim for relief. As such, Schell has state a claim of retaliation under the False Claims Act.

### C. Count III – Missouri Letter of Dismissal Statute

In his final count, Schell brings a claim for violation of Missouri's Letter of Dismissal statute. This statute requires an employer to issue, upon request, a letter "setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee was discharged or voluntarily quit such service." Mo. Ann. Stat. § 290.140.1. Schell alleges that he requested a letter of dismissal pursuant to this statute, and the letter falsely stated that he was terminated because the Company decided to eliminate his position. [Doc. #1 – Complaint].

"In order to recover damages based upon a service letter, a plaintiff must prove that he or she was refused or hindered in obtaining employment due to the

absence or inadequacy of a service letter, that the position plaintiff was refused or hindered in obtaining was actually open[,] and the rate of pay for such position." *Uhle v. Sachs Elec.*, 831 S.W.2d 774, 777 (Mo. Ct. App. 1992). Schell alleges that since his termination, he has applied for other employment advertised through various media and with remuneration ranging from federal minimum wage to $60/hour. He has not received an offer of employment, and alleges that this is because "he must state the reason for his termination for applying for new positions and he must list Defendant [Bluebird] Network as a reference." He asserts that "[a]s a result of Defendant [Bluebird] Network's failure to issue a properly requested and delivered letter of dismissal," he suffered damages including lost income and expenses in searching for replacement employment. [Doc. #1 – Complaint]. Plaintiff has alleged each element of the claim for a violation of the Letter of Dismissal Statute. Defendants dwell on Schell's statement in his Complaint that "Defendant [Bluebird] Network's board met in executive session and voted to terminate Schell, for reasons unknown to Schell." [Doc. #1 – Complaint]. Defendants claim that if Schell did not know the reason for his termination, he can't allege that the reason given in the dismissal letter was false. However, taken in context, it is clear that this statement in the Complaint refers to Schell not knowing at the time why he was terminated. At numerous other points in the Complaint, Schell alleges that he was terminated because he engaged in protected activity under the False Claims Act. Furthermore, "plaintiff has no burden of proving the true reason for his discharge; his burden is negative

19

in character because such true reason is peculiarly within the knowledge of the employer, and burden of showing the truth of the asserted reason for discharge is on the employer." *Potter v. Milbank Mfg. Co.*, 489 S.W.2d 197, 203 (Mo. 1972). As such, Defendants' argument has no merit. Schell's Complaint is sufficient to state a claim for a violation of Missouri's Letter of Dismissal Statute.

## III. Conclusion

For the reasons discussed above, Schell's Complaint is sufficient to state a claim for relief under Rule 12(b)(6). Additionally, his claims alleging fraud under the False Claims Act meet the heightened pleading requirements of Rule 9(b). Therefore, Defendants' Motion to Dismiss [Doc. #22] is DENIED.

s/ NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated: June 28, 2013  
Jefferson City, Missouri